William Lorin **BORCHERT**, Appellant,

v.

**UNITED STATES of America,** Appellee.

No. 22381.

United States Court of Appeals Ninth Circuit.

Dec. 31, 1968.

Certiorari Denied April 21, 1969. See 89 S.Ct. 1466.

---

violation of Title 18, United States Code, Section 2113(a).

The specification of error relied on by appellant is that the District Court erred in denying appellant's motion for a new trial upon the ground that he was deprived of a fair trial and denied effective aid of counsel within the meaning of constitutional rights afforded him.

The questions presented are (1) whether the totality of the circumstances surrounding the trial deprived appellant of a fair trial within the meaning of due process of law and (2) whether the presentation of evidence and testimony on behalf of appellant was sufficiently adequate so as to constitute a fair trial within the meaning of due process of law.

The appellant was arrested on March 15, 1967, the evening of the robbery, and soon thereafter was placed in a lineup for identification purposes without the benefit of counsel. He contends, with particular reference to the lineup, that he did not receive a fair trial. He asserts that the physical characteristics of the other three persons appearing with him in the lineup were very dissimilar to his. He also claims that he did not intelligently waive his right to having counsel present during the lineup.

Sander L. Johnson (appeared), Harold B. Bernson, Los Angeles, Cal., for appellant.

Ronald S. Morrow (appeared), Asst. U. S. Atty., Wm. M. Byrne, U. S. Atty., Robert L. Brosio, Asst. U. S. Atty., Crim. Div., Los Angeles, Cal., for appellee.

Before JERTBERG and ELY, Circuit Judges, and TAYLOR,* District Judge.

TAYLOR, District Judge:

Appellant has appealed from a judgment of conviction, upon the verdict of a jury, on a one count indictment charging him with robbery of a National Bank in

In support of his contention, appellant relies on language contained in United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967); Gilbert v. State of California, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967); and Stovall v. Denno, 388 U.S. 293, 87 S. Ct. 1967, 18 L.Ed.2d 1199 (1967). Appellant correctly recognizes that *Stovall*, decided the same date as *Wade* and *Gilbert*, holds that the rule announced in *Wade* shall not be retroactive to lineups held prior to June 12, 1967. He argues that regardless of the holding in *Stovall* the reasoning of the Supreme Court makes the principles announced in all three cases applicable here. He claims that the holding of the lineup colored his entire trial to the extent that he was denied due

* Hon. Fred M. Taylor, United States District Judge, for the District of Idaho, sitting by designation.

process of law. After reviewing the trial record we do not agree.

In *Wade*, supra, it was held that a lineup is a critical stage of the proceedings and that a defendant has a right to have an attorney present at the lineup. *Wade* also held that a defendant is not denied a fair trial if the in-court identification had an independent source, or the introduction of the evidence was harmless error.

In *Stovall*, supra, it is stated that a man may demonstrate that the confrontation conducted was so unnecessarily suggestive and conducive to irreparable mistaken identification that he was denied due process of law. Since *Wade* is not applicable here it was incumbent on appellant under *Stovall* to show that he was denied due process of law because of the lineup identification.

It is abundantly clear from the evidence in this case that the identification of appellant was not dependent on the lineup. Furthermore, there is no evidence in the record that demonstrates or indicates that the confrontation was so unnecessarily suggestive and conducive to irreparable mistaken identification so as to deny appellant due process of law.

▇ The appellant was identified as the robber by Mrs. Corey, an employee of the bank, who did not attend the lineup. She was standing near Mrs. Canada, the person robbed, and at the trial positively identified appellant as the robber. Also, the palm print of appellant was "lifted" from Mrs. Canada's teller window in the bank. This evidence in and of itself was sufficient to convict appellant independent of the lineup.

At the trial Marjorie Jones, assistant cashier at the bank, identified the appellant as the man she saw robbing the bank and the person that she and Mrs. Hastie had previously observed outside the bank during their lunch hour. She testified that his activities were so peculiar that she dictated a description of appellant and his car to Mrs. Hastie. Miss Jones was positive that the man she observed outside the bank was the one who later entered the bank and received change from Mrs. Hastie. Miss Jones related that she observed the appellant for approximately forty-five minutes during her lunch hour on the day of the robbery, that he was the man she observed at Mrs. Hastie's window and the one who robbed Mrs. Canada.

Mrs. Hastie identified appellant as the man she and Marjorie Jones observed during their lunch hour. She also testified that she recorded a description of the appellant and his automobile, that he came to her window for change, and about ten minutes later he came through the rear door wearing glasses and a hat and walked towards Marie Canada's window. The victim of the robbery, Mrs. Canada, in identifying appellant stated: "I am just positive it is the man. The whole time I was being robbed I looked right into his face, and there isn't any doubt in my mind." In addition Mr. Kieffer, manager of the bank, and Mr. Zimmerman, assistant cashier, did not identify the appellant at the trial but testified that the robber left the bank and entered the automobile described by other witnesses as the automobile the appellant was seen in prior to the robbery and the one appellant admitted he drove off in.

Appellant admitted doing certain things prior to the robbery as related by Jones and Hastie and admitted that he obtained change from Hastie at a teller window near the front of the bank as stated by Jones and Hastie. He denied being at the window of the teller who was robbed even though his palm print was "lifted" from that window. Appellant admitted that he was in the bank on the day of the robbery but, of course, he did not admit that he was the person who committed the robbery. He does not question the sufficiency of the evidence to prove his guilt.

▇ The trial record clearly shows that in the entire context of the proceedings against appellant, with particular reference to the lineup to which he was subjected, he did receive a fair trial within the meaning of due process of law.

The appellant was sufficiently identified as the person who committed the robbery by witnesses who did not attend the lineup and in addition, it was not shown that the witnesses who may have attended the lineup identified appellant as a result thereof. There is nothing in the record which indicates or suggests that appellant was mistakenly identified because of the lineup.

 Appellant contends that the presentation of evidence and testimony on his behalf was so inadequate that he was denied a fair trial within the meaning of due process of law. In substance he claims that he was denied the effective assistance of counsel. It is not uncommon for a defendant to find fault with his counsel after he is convicted. Appellant's principal criticism in regard to the adequacy of his trial counsel is that he did not present more witnesses on his behalf. According to appellant's affidavits these witnesses could have testified to his usual activities on Wednesday and what he did on the day of the robbery which was also Wednesday. He claims these witnesses could have testified concerning his attitude, emotions and state of mind in order to show possible motive or lack thereof for commission of the crime. These witnesses were not to be used to establish an alibi or to show times inconsistent with the case of the prosecution. It is reasonable to believe that at the time trial counsel did not consider the testimony of such witnesses relevant and admissible or for some other reason of no benefit to the defense of appellant. This may or may not have been correct. It has been held many times that hindsight is not the proper measure for determining the adequacy of representation by counsel, and it has been repeatedly held that the Constitution does not guarantee that counsel appointed for, or employed by, a defendant shall measure up to his notions of ability or competency. Sherman v. United States, 241 F.2d 329 (9 Cir. 1957). It is a well settled rule that relief from conviction on the ground of incompetent or ineffective counsel will be granted only when

the trial was a farce, or a mockery of justice, or was shocking to the reviewing court, or the purported representation was only perfunctory, in bad faith, a sham, a pretense, or without adequate opportunity for conference and preparation. Williams v. Beto, 354 F.2d 698 (5 Cir. 1965); Bates v. Wilson, 385 F.2d 771 (9 Cir. 1967); Barba-Reyes v. United States, 387 F.2d 91 (9 Cir. 1967); Smith v. United States, 389 F.2d 564 (9 Cir. 1968).

 We have carefully examined the record of the trial and believe that trial counsel did a commendable job in representing appellant. The contention of lack of competent counsel at trial is without merit.

The judgment is affirmed.