Justice Stevens,
concurring.
The study of history for the purpose of ascertaining the original understanding of constitutional provisions is much like the study of legislative history for the purpose of ascertaining the intent of the lawmakers who enact statutes. In both situations the facts uncovered by the study are usually relevant but not necessarily dispositive. This case illustrates why even the most dedicated adherent to an approach to constitutional interpretation that places primary reliance on the search for original understanding would recognize the relevance of changes in our society.
At least since 1604 it has been settled that in the absence of exigent circumstances, a government agent has no right to enter a “house” or “castle” unless authorized to do so by a valid warrant. See Semayne’s Case, 5 Co. Rep. 91a, 77 Eng. Rep. 194 (K. B.). Every occupant of the home has a *124 right — protected by the common law for centuries and by the Fourth Amendment since 1791 — to refuse entry. When an occupant gives his or her consent to enter, he or she is waiving a valuable constitutional right. To be sure that the waiver is voluntary, it is sound practice — a practice some Justices of this Court thought necessary to make the waiver voluntary[1] — for the officer to advise the occupant of that right.[2] The issue in this case relates to the content of the advice that the officer should provide when met at the door by a man and a woman who are apparently joint tenants or joint owners of the property.
In the 18th century, when the Fourth Amendment was adopted, the advice would have been quite different from what is appropriate today. Given the then-prevailing dramatic differences between the property rights of the husband and the far lesser rights of the wife, only the consent of the husband would matter. Whether “the master of the house” consented or objected, his decision would control. Thus if “original understanding” were to govern the outcome of this case, the search was clearly invalid because the husband did not consent. History, however, is not dispositive because it is now clear, as a matter of constitutional law, that *125 the male and the female are equal partners. Reed v. Reed, 404 U. S. 71 (1971).
In today’s world the only advice that an officer could properly give should make it clear that each of the partners has a constitutional right that he or she may independently assert or waive. Assuming that both spouses are competent, neither one is a master possessing the power to override the other’s constitutional right to deny entry to their castle.
With these observations, I join the Court’s opinion.

 See, e. g., Schneckloth v. Bustamonte, 412 U. S. 218, 284-285 (1973) (Marshall, J., dissenting) (pointing out that it is hard to comprehend “how a decision made without knowledge of available alternatives can be treated as a choice at all,” and arguing that “[i]f consent to search means that a person has chosen to forgo his right to exclude the police from the place they seek to search, it follows that his consent cannot be considered a meaningful choice unless he knew that he could in fact exclude the police”).

 Such advice is surely preferable to an officer’s expression of his or her desire to enter and to search in words that may be construed either as a command or a question. See id., at 275-276 (Douglas, J., dissenting) (noting that “ ‘[u]nder many circumstances a reasonable person might read an officer’s “May I” as the courteous expression of a demand backed by force of law’” (quoting Bustamonte v. Schneckloth, 448 F. 2d 699, 701 (CA9 1971))).